UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COMPONENT HARDWARE GROUP, INC., | : | CIVIL ACTION NO. 05-891 (MLC) |
| | : | |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| TRINE ROLLED MOULDING CORP., | : | |
| | : | |
| Defendant/ Counterclaimant. | : | |
| _____ | : | |
| | : | |
| TRINE ROLLED MOULDING CORP., | : | |
| | : | |
| Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS E. CARR and RICHARD BOHACIK, | : | |
| | : | |
| Third-Party Defendants. | : | |
| _____ | : | |

**COOPER, District Judge**

This matter comes before the Court on motion of third-party
defendants, Thomas E. Carr and Richard Bohacik, to enforce a
settlement agreement and for an award of counsel fees and costs
of the motion.  The Court decides the motion on the pleadings,
briefs and evidence submitted by the parties, without oral
argument pursuant to Fed. R. Civ. P. 78.[1]  The Court will grant the
part of the motion seeking to enforce the settlement agreement,
but deny the part seeking an award of counsel fees and costs.

_____

[1]  The parties are familiar with the electronic filings pertinent to
this motion.  We refer simply to the docket entry number ("dkt. entry") for
the case materials cited here.

BACKGROUND

A.  Procedural History

    This commercial litigation was commenced in state court by plaintiff, Component Hardware Group, Inc. ("Component") against defendant, Trine Rolled Moulding Corp. ("Trine"), and was removed to this Court by Trine on February 14, 2005.  The procedural history in this Court, as relevant here, is as follows.

    On February 25, 2005, Trine filed an answer, counterclaim and third-party complaint ("Answer").  The third-party defendants are named and described as Thomas E. Carr ("Carr"), the current President and Chief Operating Officer of plaintiff Component, and Richard Bohacik ("Bohacik"), a former principal of Component who is listed as the inventor of a specified patent assigned to Component.[2]  Trine's Answer asserted, by way of counterclaim and third-party complaint, claims against the named parties as follows:

| Count | Claim | Parties Named |
|-------|-------|---------------|
| I | Breach of requirements contract | Component |
| II | Theft of trade secrets | Component |
| III | Breach of fiduciary duty | Component |
| IV | Breach of covenant of good faith | Component |
| V | Interference with prospective economic advantage | Component |

_____

    [2]  Richard Bohacik has a brother, Stephen Bohacik, who was affiliated with Component.  (See dkt. entry 38 at 3.)  For purposes of this motion, we confine our references to Richard Bohacik, the third-party defendant.

2

| VI | Injurious falsehood and slander | Component/Carr |
| VII | Trade libel | Component/Carr |
| VIII | Conversion | Component |
| IX | Common law unfair competition | Component |
| X | Violation of NJ Unfair Competition Act | Component |
| XI | Violation of Lanham Act | Component |
| XII | Unjust enrichment | Component |
| XIII | Constructive trust | Component |
| XIV | Breach of implied covenant of confidentiality | Component |
| XV | Declaration of inventorship or unenforceability of the '975 patent. | Component/Bohacik |

Component and Trine immediately cross-moved for preliminary injunctive relief against each other on all issues in dispute between them except the patent dispute, which they agreed to defer.  The Court permitted limited expedited discovery, and conducted a ten-day evidentiary hearing over the period April to June, 2005.  On June 27, 2005, the Court issued a lengthy opinion and an order on the cross-motions for injunctive relief, making certain preliminary findings and denying any injunction.  (Dkt. entries 38, 39.)

Meanwhile, on April 18, 2005, Component (counterclaim defendant) and Carr and Bohacik (third-party defendants) filed an answer to Trine's counterclaim and third-party complaint.  (Dkt.

entry 21.)  In that pleading the third-party defendants asserted denials and defenses, but no counterclaims or crossclaims.  (Id.)

In August, 2005, the Magistrate Judge entered an order staying discovery in the case and referring it to mediation. (Dkt. entry 45.)  Also in August, 2005, separate counsel for the third-party defendants entered an appearance, thus separating the representation of Component from that of the third-party defendants.  (Dkt. entry 46.)

On October 25, 2005, while the stay of discovery was still in effect, Trine moved for summary judgment on (1) all claims in Component's complaint, and (2) liability against Component on Counts I, III, IV, V, VI and VII of Trine's counterclaim.  (Dkt. entry 52.)  Although third-party defendant Carr was named in Counts VI and VII of that pleading, Trine's motion for summary judgment was not directed to Carr.  On October 31, 2005, the Magistrate Judge entered an Order of Designation for Mediation, continuing the stay of proceedings and specifically directing that Trine's motion for summary judgment be held in abeyance pending mediation.  (Dkt. entry 55.)

On December 1, 2005, counsel for Trine advised the Magistrate Judge by letter that the mediation had concluded without settlement.  In that letter, Trine requested that the Court set a schedule for responsive briefing on its motion for summary judgment, and a schedule for discovery.  Component's counsel

4

responded with a December 13, 2005 letter requesting, <u>inter</u> <u>alia</u>, a schedule of at least one year to conduct and complete discovery before any summary judgment motions would be appropriate.  (Dkt. entry 58.)

Counsel for all parties participated with the Magistrate Judge in a lengthy teleconference on the record on December 16, 2005.  (Dkt. entry 60.)  The focus of that conference was the differing positions of all the parties concerning the scope and timetable for conducting discovery, and the discovery issues posed by the then-pending Trine motion for summary judgment against Component.  Counsel for the third-party defendants stated that although Trine's pending summary judgment motion did not seek relief against them, the issues presented in that motion implicated them and would affect the course of the litigation as to them, so they would require discovery and an opportunity to respond to that motion as well as Component.  Those statements are quoted in the margin.[3]

---

[3]   During the December 16, 2005 teleconference, counsel for Trine, although acknowledging that its then-pending motion for summary judgment sought relief only against defendant Component, stated as to third-party defendants:

> But they ... do have independent liability.  Mr. Carr is personally liable for his own disparagement of Trine products. Mr. Bohacik's liability is independent of Mr. Carr's.  Mr. Bohacik is involved in this case because he has stolen Trine's intellectual property.

(Dkt. entry 60 at 8.)

When asked by the Magistrate Judge, in relation to Trine's pending summary judgment motion against Component, what if any discovery the third-party defendants would need, their counsel stated:

At the close of the December 16, 2005 conference, the
Magistrate Judge directed counsel for Component and counsel for
the third-party defendants to submit letters by the following
Wednesday, December 21, 2005, describing the discovery, and
discovery schedule, they would each expect to need to respond to

---

[T]he motion ... clearly ... is looking to implicate the claims
against Mr. Carr, in particular ... a full-blown discussion about
Component's and Carr's alleged trade libel and defamation.  So,
it's pretty clear that Mr. Carr is going to in fact, have to
respond to this, because any findings that are made ... would be a
loss to the case and would impact on any subsequent motion
practice that may occur.
....
[T]here's a whole host of issues that I need.  In fact, ... no
discovery was taken regarding: the alleged defamatory statement;
the impact of the statement; who heard them; when were they made;
what was the result of them; if they in fact, caused any resulting
injury or in fact did they keep those very clients that the
statements were made to?...  I'm thinking at least three or four
[depositions] ... to include the customers to whom the statements
were made as well as the ... alleged person that is hearing them
and ... Firello's deposition.  Of course, the third [party
defendants] then were not participants in any of the discovery
that has occurred to date.  So, we would certainly need to be
taking these issues from the very beginning and taking all
necessary discovery with respect to them as I've outlined.
        The second issue that's equally as important ...  is the
claims against Mr. Bohacik.  It seems that Trine is attempting to
assert that it was their idea that [the can seam design for the
Grease Guard] filter that belonged to Component.  There's
absolutely no evidence of that.  In fact, ... [in] the motion for
summary judgment, Trine is attempting to have these facts
established regarding the creation of the grease guard.  There's
been absolutely no discovery of who and when and what and why
Trine would ever attempt to assert that in fact they had the idea.
There's no documents that support the creation of the [can seam
design] from Trine.  There's no testimony to support that they
had, in fact, created this.  So, we would need to go further down
to the conception, the invention and intellectual property
question for the depositions as well.  And I'm anticipating that
those depositions could be three or four as well.
        We would not even be able to respond to the motion for
summary judgment until we were able to take the appropriate
discovery on the third party claim....  [T]he discovery has not in
any way touched upon these very [critical] issues to the third
party defendant[s]."

(Id. at 20-22.)  [Brackets used to correct clerical errors in transcript.]

6

the issues raised by Trine's summary judgment motion.  (Id. at 25-30.)

On December 21, 2005, counsel for third-party defendants telephoned the chambers of the Magistrate Judge to report that Trine and the third-party defendants had reached a settlement. At the request of the law clerk who received that call, counsel for the third-party defendants sent a confirming e-mail on the same date, addressed to the chambers of the Magistrate Judge, with e-mail copies to counsel for both Trine and Component, stating as follows:

> [A]s you requested, this will confirm my telephone call to you that Trine and Third-Party defendants Messrs Carr and Bohacik have agreed to exchange mutual releases of all claims and Trine has agreed to dismiss its claims asserted against Messrs Carr and Bohacik in this action with prejudice.  Consequently, Messrs Carr and Bohacik will not be submitting a letter today regarding Trine's motion for partial summary judgment. It is expected that the stipulation of dismissal can be executed over the next few days and will be filed as soon as possible.  If we run into any problems in this regard, I will be back in touch.

(Dkt. entry 64-5.)[4]

On that same date, December 21, 2005, counsel for Component submitted a six-page letter to the Magistrate Judge, as it had

---

[4]  Many of the record citations in this opinion refer to docket entry 64.  That is a multi-part electronic filing which contains, inter alia, a certification of Celeste M. Butera, Esq., counsel for the movants.  Attached to that certification are eighteen numbered exhibits, which are documents containing many of the contemporaneous communications among the parties and the Court relevant to this motion.

Each of the numbered exhibits to the Butera Certification appear in the docket numbering system two digits later.  For example, Exhibit 1 to the Butera Certification is docket entry 64-3, and Exhibit 18 is docket entry 64-20.

been directed to do during the teleconference on December 16, 2005.  That letter provided a detailed listing of areas of discovery, described as discovery "Component must have before it can properly respond to Trine's summary judgment motion, and/or before Component can make its own cross-motion for summary judgment in an efficient and effective manner."  (Dkt. entry 64-19.)  Attached to that letter was a 17-page "First Request for Production of Documents" from Component, described in the letter as "an inchoate document demand totally without prejudice and with a full reservation of rights to add or subtract, so that Your Honor can further see what documents and information Component requires to response [sic] to Trine's summary judgment motion."  The letter concluded, "It is quite clear to us that this motion is premature, and that discovery should be advanced at least for a period of time constituting several months before any summary judgment motions are warranted."  (Id.)

On December 27, 2005, a substitution of counsel was filed on behalf of Component.  (Dkt. entry 59.)  By that substitution, Component introduced into the litigation a different law firm and attorney of record, previously not involved in the case.

Component's new counsel, on January 16, 2006, sent a six-page letter to the Magistrate Judge.  (Dkt. entry 64-20.)  A copy of that letter was directed to counsel for Trine but not to counsel for third-party defendants who, on December 21, 2005 had

8

advised the Court of their settlement with Trine.  That letter
again provided a detailed listing of areas of discovery,
described as "on behalf of plaintiff Component ... in response to
Your Honor's request that we identify for the Court what
discovery is needed to respond to the motion for partial summary
judgment of ... Trine.  That motion not only seeks the dismissal
of all of Component's affirmative claims, but also seeks judgment
on six of Trine's fifteen counterclaims...."  (Id.)  That letter
concluded, "We estimate that fact discovery will likely take
approximately six months to complete; we will require another two
months for expert discovery."  (Id.)

On January 26, 2006, the Magistrate Judge conducted another
teleconference pertaining to setting up a discovery schedule.
(Dkt. entries 61, 63.)  As of that date, no discovery scheduling
order had as yet been entered in the case since its inception
because (1) the case was originally before the District Judge for
months of injunctive proceedings; (2) it had then been stayed for
several more months for mediation; and (3) the filing of the
summary judgment motion by Trine had occasioned the unresolved
discussions on discovery with the Magistrate Judge described
above.  As a result of the January 26, 2006 conference, the
Magistrate Judge entered the first of a series of discovery
scheduling orders on January 31, 2006.  (Dkt. entry 62.)

Counsel for third-party defendants entered their appearance
in the January 26, 2006 teleconference, and advised the
Magistrate Judge that a dispute had arisen with Trine as to the
settlement of the third-party claims.  (Dkt. entry 63 at 5-18.)
The Magistrate Judge, in issuing the Scheduling Order of January
31, 2006, included a direction that if the parties could not
resolve that dispute, third-party defendants should file a formal
motion to enforce the settlement.  (Dkt. entry 62, ¶¶ 2,3.)

On February 10, 2006, counsel for the third-party defendants
filed the present motion against Trine, seeking enforcement of
the settlement agreement and an award of fees and costs of the
motion.  (Dkt. entry 64.)  After the motion was filed, this
District Judge conferred with the parties by teleconference on
March 6, 2006.  (Dkt. entry 70.)  Neither party requested oral
argument or an evidentiary hearing on this motion.  The motion
has been fully briefed, with submission of certifications by both
parties, which the Court has carefully reviewed in rendering its
decision.[5]

B.  Communications between the parties to the alleged settlement

Here we summarize the record before the Court describing all
communications between counsel for defendant/third-party

---

[5]  We denied without prejudice Trine's motion for summary judgment, by
Order entered June 29, 2006.  (Dkt. entry 84.)  That Order granted Trine leave
to renew the motion after the completion of relevant discovery.  (Id.)  Also,
as of June 9, 2006, Trine filed a motion for leave to file an amended
counterclaim against Component.  (Dkt. entry 76.)  That motion is currently
pending.

plaintiff (Trine) and counsel for the third-party defendants
(Messrs. Carr and Bohacik), pertaining to a settlement between
those parties.  Those communications took place between December
16, 2005 and the date of the filing of this motion, February 10,
2006.  The attorneys who conducted those communications were
Messrs. Brendan Judge and Mitchell W. Taraschi for Trine, and Ms.
Celeste M. Butera for third-party defendants.  The documented
record of those communications is not in dispute.

On Friday, December 16, 2005, after the teleconference of
that date with the Magistrate Judge, Mr. Judge contacted Ms.
Butera by telephone and proposed that Trine and the third-party
defendants enter into a settlement in which those parties would
release and dismiss, with prejudice, any claims each had or could
assert against the other.  (Dkt. entry 64-2, ¶ 1.)  On Tuesday,
December 20, 2005, Mr. Judge placed the proposal in writing, in
an e-mail to Ms. Butera stating:

> As I confirmed yesterday afternoon, Trine proposes
> that it exchange mutual releases with individual
> defendants Thomas Carr and Richard Bohacik.
>
> Trine will not release any claim against Component
> whether asserted or unasserted.  The releases would
> provide that they have no preclusive effect upon and
> shall not be deemed to constitute a waiver of any claim
> that Trine and Component have against each other.
> Trine would contemporaneously execute a Stipulation of
> Dismissal with Prejudice of all claims asserted against
> defendants Carr and Bohacik.
>
> As I stated in my voicemail message, Trine expects
> an answer to this proposal today.

(Dkt. entry 64-3.)

11

Ms. Butera replied to Trine's counsel by telephone that same day.  (Dkt. entry 64-2, ¶ 3.)  The next day was Wednesday, December 21, 2005, the deadline set by the Magistrate Judge for submission of discovery plans by each party.  On that day Ms. Butera received an e-mail from Mr. Taraschi on behalf of Trine, stating as follows:

> Per your discussions with [Mr. Judge], attached is the Settlement Agreement and Mutual Release to be executed by Mr. Carr and Mr. Bohacik.  Please do not hesitate to contact me should you have any questions or comments.

(Dkt. entry 64-4.)

Attached to that e-mail was a seven-page typed document entitled "Settlement Agreement and Mutual Release."  (Id.)  The first section, headed Recitals, included the following paragraph ["Whereas Clause"]:

> WHEREAS, in order to avoid the cost and uncertainty of further litigation and trial, Trine and Messrs. Carr and Bohacik desire to compromise and settle any claims among Trine, Carr and Bohacik, each without admitting any liability, and to adjust and settle their rights and obligations in connection with the Action.

(Dkt. entry 64-4.)

The key provisions, in the Terms section that followed, were expressed as follows:

> 2.   Dismissal of the Third-party Complaint against Carr and Bohacik.  As soon as practicable after the execution of this Agreement, Trine shall file with the Court, a stipulation of dismissal with prejudice, of the claims asserted in the Third-party Complaint as to Third-party defendants Carr and Bohacik only.

3.    Trine, by this Agreement, hereby reserves all rights and remedies as against CHG,[6] each of its past, present and future directors, officers (with the exception of Messrs. Carr and Bohacik acting in their individual capacity), shareholders, owners, partners, joint venturers, principals, trustees, creditors, attorneys, Wolf Block Brach, Eichler,[7] representatives, employees, managers, parents, subsidiaries, divisions, subdivisions, departments, affiliates, predecessors, successors, assigns and assignees, or any agent acting or purporting to act for it or on its behalf.

The parties hereto agree and acknowledge that Trine does not release any claim against CHG whether asserted or unasserted.  This Agreement has no preclusive effect upon and shall not be deemed to constitute a waiver of any claim that Trine and CHG have against each other.

(Id.)  The succeeding paragraphs contained mutual release language and standard provisions, of which the headings are listed in the margin.[8]

That same day, Wednesday, December 21, 2005, Ms. Butera telephoned the chambers of the Magistrate Judge to inform the

---

[6]  This text used the abbreviation "CHG" to refer to plaintiff, Component Hardware Group, Inc.

[7]  This is a reference to the law firm then representing Component in the litigation.

[8]  The paragraphs that follow the above-quoted language have the following headings and paragraph numbers:

4.    Release and Covenant Not to Sue in Favor of Messrs Carr and Bohacik.
5.    Release and Covenant Not to Sue in Favor of Trine.
6.    No Admission of Liability.
7.    Mutual and Binding Agreement.
8.    Knowing and Voluntary Agreement.
9.    Construction of Agreement.
10.   Complete Agreement.
11.   Severability.
12.   Counterparts.

(Dkt. entry 64-4.)

13

Court that the third-party defendants had reached a settlement
with Trine.  At the request of the Court, Ms. Butera sent a
confirming e-mail to the Court, with copies to counsel to Trine
and Component, stating:

> [T]his will confirm my telephone call to you that Trine
> and Third-Party defendants Messrs Carr and Bohacik have
> agreed to exchange mutual releases of all claims and
> Trine has agreed to dismiss its claims asserted against
> Messrs Carr and Bohacik in this action with prejudice.
> Consequently, Messrs Carr and Bohacik will not be
> submitting a letter today regarding Trine's motion for
> partial summary judgment.  It is expected that the
> stipulation of dismissal can be executed over the next
> few days and will be filed as soon as possible.  If we
> run into any problems in this regard, I will be back in
> touch.  Thank you and Happy Holidays.

(Dkt. entry 64-5.)

Mr. Taraschi and Ms. Butera exchanged several e-mails with
proposed revisions to the written Settlement Agreement document
during the period from December 21, 2005 through January 13,
2006.  We will refer to the first version of the written
Settlement Agreement document, exchanged by the parties on
December 21, 2006, as the "First Draft".  See n. 8 supra and
accompanying text.  We will refer to the last version they
exchanged, on January 13, 2006, as the "Last Draft."  (Dkt. entry
64-11.)

Between the First Draft and the Last Draft, counsel for the
parties readily made several changes to the document, as

described in the margin.[9]

Mr. Taraschi and Ms. Butera also engaged in some discussion
of paragraph 3 of the Terms section during that period, as
reflected in their e-mails.  (See dkt. entries 64-4, 64-6 through
64-11.)   The edited text of that paragraph in the Last Draft, to
which they both expressed assent as described below, reads as
follows:

> 3.   <u>The parties hereto agree and acknowledge that</u>
> Trine, by this Agreement, hereby reserves all rights

---

[9]   The following changes were agreed upon between Ms. Butera and Mr.
Taraschi without extended discussion, and incorporated in the later drafts:

In Whereas Clause, between "without" and "admitting," inserting:
"commenting upon the merit or lack thereof of any claims and without".

In clause headed "NOW THEREFORE," editing as follows:
"in consideration of the mutual covenants contained in this Agreement
<u>(and without any monetary compensation being paid by any party to this
Agreement)</u>, the receipt and sufficiency of <u>such consideration</u> ~~which is~~
hereby <u>being</u> acknowledged, it is agreed to among Trine, Carr and Bohacik
as follows:".

In Terms section, paragraph 2, after "with prejudice," changing "the
claims" to "all claims."  Also, between "claims" and "asserted,"
inserting: "that were or could have been".

In Terms section, paragraph 4, before "(the 'Releasors')," inserting
"and Frank Rella Jr."  NOTE: Mr. Rella is President of Trine.  Also,
between "whether or not they" and "could have been asserted," inserting
"were asserted in the action or".

In Terms section, paragraph 5, between "forever discharges" and before
"Trine," inserting "Frank Rella, Jr.,."  Also, between "whether or not
they" and "could have been asserted," inserting "were asserted in the
action or".

In Terms section, paragraph 6, editing as follows:
"<u>No Admission of Liability</u>.  This Agreement is not in any way an
admission or concession <u>regarding the merit or lack thereof or</u> ~~of the
truth of any allegation,~~ the validity <u>or lack thereof</u> of any claim
asserted in the Action, <u>or the truth of any allegation asserted in the
Action</u>."

Also, on signature page, adding signature line for Frank Rella, Jr.

(See dkt. entries 64-4, 64-6 through 64-11.)

and remedies as against CHG, each of its past, present
and future directors, officers (with the exception of
Messrs. Carr and Bohacik), ~~acting in their individual
capacity)~~, shareholders, owners, partners, joint
venturers, principals, trustees, creditors, attorneys,
<u>including</u> Wolf Block Brach, Eichler, representatives,
employees, managers, parents, subsidiaries, divisions,
subdivisions, departments, affiliates, predecessors,
successors, assigns and assignees, or any agent acting
or purporting to act for it or on its behalf.

The parties hereto agree and acknowledge that Trine
does not release any claim against CHG whether asserted
or unasserted.  <u>The parties hereto agree and
acknowledge that CHG is not a party to this Agreement
and therefore is not releasing any claims it may have
against Trine by this Agreement.</u>  This Agreement has no
preclusive effect upon and shall not be deemed <u>or
construe</u> to constitute a waiver <u>or release</u> of any
claim that Trine and CHG have against each other.

(Dkt. entries 64-11, -12.)

On January 13, 2006, Mr. Taraschi sent the Last Draft to Ms.

Butera with the following e-mail:

[A]ttached is a tracked version of the proposed
Settlement Agreement.  Please pay particular attention
to paragraph 3.  I believe it now addresses all of your
concerns.  If this meets with your approval, I will
send a final version to you for execution.

(Dkt. entry 64-11.)

Ms. Butera replied, also on January 13, 2006, as follows:

This is acceptable and you can send me the execution
version, except in the execution version that you send
please add, in the signature lines for my clients, that
they are signing "individually," or "in their
individual capacity".  Also, I think a paragraph should
be added that each side is bearing their own attorneys'
fees.  Thanks for your work on this and bringing this
to a conclusion.  Please do not hesitate to contact me
with any comments or questions.

(Dkt. entry 64-12.)

Ms. Butera followed up by telephone calls to Mr. Taraschi on Monday, January 16 and the morning of Tuesday, January 17, 2006. The substance of what they recall from their January 17, 2006 conversation is stated in their respective certifications.[10]

It will be recalled that Component, which was not a party to the settlement between Trine and Messrs. Carr and Bohacik, engaged substitute counsel as of December 27, 2005, and that the new counsel directed a letter to the Magistrate Judge dated January 16, 2006, regarding the discovery schedule that the Magistrate Judge was attempting to define in light of Trine's then-pending motion for partial summary judgment.  As mentioned

---

[10]  A certification by Mr. Taraschi, filed in opposition to this motion, states inter alia:

> On January 17, 2006, I spoke to Celeste Butera regarding her January 13, 2006 proposed revisions to the draft settlement agreement.  I advised her at that time that I would discuss her proposed revisions with Trine during a teleconference that I had scheduled for later that day.  I also advised her that if the proposed revisions were acceptable to Trine, I anticipated forwarding the revised settlement agreement to her for execution.

(Dkt. entry 65-2, ¶ 2.)

Ms. Butera, in her certification, describes a somewhat different version of that conversation with Mr. Taraschi:

> January 13, 2006 was a Friday.  On Monday, January 16, 2006, when I did not receive the execution version of the document memorializing the parties' settlement agreement, I telephoned counsel for Trine to inquire whether it had been sent.  I did not receive a return call that day because I am informed the office of Trine's counsel was closed.

> On January 17, 2006, in the morning, I contacted counsel for Trine again by phone and spoke with counsel.  Counsel for Trine informed me that he would be sending me the execution version of the document memorializing the parties' settlement agreement later that afternoon.

(Dkt. entry 64-2, ¶¶ 9-10.)

above, that letter outlined various areas of contemplated
discovery and concluded, "We estimate that fact discovery will
likely take approximately six months to complete; we will require
another two months for expert discovery." (Dkt. entry 64-20.)

Counsel for Trine received Component's January 16 letter on
Tuesday, January 17, 2006. That evening at 5:41 p.m., Mr. Judge
(representing Trine) sent an e-mail letter to Ms. Butera,
counsel for third-party defendants. The text of that letter is
quoted verbatim in the margin.[11] Ms. Butera responded to Mr.

---

[11] The January 17, 2006 e-mail from Mr. Judge to Ms. Butera said:

I write to advise that we received today the attached letter
from CHG's new counsel, Douglas Eakeley, dated January 16, 2006.
As you can see, CHG, after speaking to Thomas Carr on Friday, has
taken the position that this lawsuit will have to start over.

As you know, we have been attempting to negotiate a
settlement between Trine and your clients, third-party defendants,
Mr. Carr and Richard Bohacik. When Lee Goldberg and I raised with
you the possibility of negotiating a settlement with the third-
party defendants, we did so with the expectation that it would
streamline this matter considerably. Since CHG (apparently at Mr.
Carr's direction) has failed to acknowledge the discovery and
protracted hearing conducted in this matter, but instead argues
that this case is not different from a case where the initial
pleadings have just been filed, Trine sees no value in dismissing
the third-party defendants. While we were close to resolving the
terms of that proposed settlement, no agreement was reached.

I know that in reliance on the fact that we were working
towards settling the claims between Trine and the third-party
defendants you have not submitted a letter to Judge Bongiovanni as
she had requested setting forth the third-party defendants'
position with regard to discovery. I am writing to give you the
opportunity to do so.

Judge Bongiovanni has scheduled a teleconference for January
26th at 1:00 p.m. to address CHG's claims that it needs discovery
prior to the Court hearing Trine's motion for summary judgment. I
will be submitting a letter setting forth Trine's position on
discovery before then, I suggest you do so as well.

I expect that this will be coming as a surprise to you.
While this is not the result that either of us desired, the
response and position of CHG certainly serves to complicate the

18

Judge and his colleague Mr. Taraschi, by e-mail dated January 19, 2006.[12]

An additional round of communications between them failed to resolve the issue now presented in this motion.  (See dkt. entries 64-15, -16.)  The Magistrate Judge addressed the issue with the parties during the conference on January 26, 2006. (Dkt. entry 63 at 5-18.)  When it was not resolved at that conference, the Court directed the filing of this motion.  (Dkt. entry 62.)

<u>DISCUSSION</u>

A federal district court has inherent authority to enforce a settlement agreement entered into between litigants while the litigation is pending before it.  <u>See, e.g.,</u> <u>Shoels v. Klebold,</u>

---

matter.  I regret that we were unable to resolve the issues between our clients.

(Dkt. entry 64-13.)

[12]  The January 19, 2006 e-mail from Ms. Butera to Messrs. Judge and Taraschi said:

> As you well know, Trine and Messrs. Carr and Bohacik reached an agreement to settle their respective claims against each other in this lawsuit.  The law is clear that the agreement reached between Trine and Messrs. Carr and Bohacik is fully enforceable and Trine has no basis to withdraw from the agreement reached by the parties.  Please advise me by 3:00 p.m. tomorrow that Trine intends to fully comply with the agreement reached between the parties.  Otherwise, Messrs. Carr and Bohacik will immediately apprise the Court of Trine's conduct and will seek enforcement of the settlement agreement reached by the parties.  Please also be advised that all attorneys fees and costs associated with apprising the Court and seeking enforcement of the settlement agreement will be sought against Trine.

(Dkt. entry 64-14.)

375 F.3d 1054, 1060 (10th Cir. 2004); <u>Bandera v. City of Quincy</u>, 344 F.3d 47, 51 (1st Cir. 2003); <u>Carr v. Runyan</u>, 89 F.3d 327, 331 (7th Cir. 1996); <u>accord</u>, <u>Omega Eng'g, Inc. v. Omega, S.A.</u>, 432 F.3d 437 (2d Cir. 2005) (affirming grant of motion to enforce settlement agreement reached during pending litigation); <u>Saudi Basic Indus. Corp. v. Exxon Corp.</u>, 364 F.3d 106 (3d Cir. 2004) (remanding for evidentiary hearing on motion to enforce settlement in pending action).[13]  "There is a strong judicial policy in favor of parties voluntarily settling lawsuits.... [S]uch agreements are specifically enforceable and broadly interpreted." <u>Pennwalt Corp. v. Plough, Inc.</u>, 676 F.2d 77, 80 (3d Cir. 1982) (listing cases).

State contract law governs the formation, construction and enforcement of settlement agreements in federal court. <u>See</u> <u>Carr</u>, 89 F.3d at 331; <u>Excelsior Ins. Co. v. Pennsbury Pain Ctr.</u>, 975 F.Supp. 342, 348-49 (D.N.J. 1996); <u>see also</u> <u>Yuen v. Bank of China</u>, 151 Fed.Appx. 106, 107 (3d Cir. 2005) (affirming choice of law analysis by district court sitting in New Jersey, and applying New York contract law to decide motion to enforce

---

[13]  The exercise of the inherent authority of the trial court over settlement agreements in pending cases is not to be confused with the jurisdictional limitations on that authority that arise once the case has been dismissed. <u>See</u> <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375 (1994) (holding that district court has neither ancillary jurisdiction nor inherent power to enforce a settlement agreement in a closed case unless the parties' obligation to comply with its terms was made part of the order of dismissal or its terms were incorporated into the order of dismissal); <u>Shaffer v. GTE North, Inc.</u>, 284 F.3d 500, 504 (3d Cir. 2002) (applying <u>Kokkonen</u>); <u>In re Phar-Mor, Inc. Sec. Litig.</u>, 172 F.3d 270, 274-75 (3d Cir. 1999) (same).

alleged settlement agreement).  The parties to this motion have
presented no choice of law issue, and we agree that the law of
the forum applies.  Accordingly, we will decide the motion based
upon New Jersey contract law principles.

New Jersey law holds that "a settlement agreement is a form
of contract."  Mortellite v. Novartis Crop Protection, ___ F.3d
___ (3d Cir. 2006).  Also, it "may be freely entered into and . .
. a court, absent a demonstration of 'fraud or other compelling
circumstances', should honor and enforce [the contract] as it
does other contracts."  Pascarella v. Bruck, 190 N.J. Super. 118,
124-25 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J.
Super. 130, 136 (App. Div. 1974)).  "[S]ettlement of litigation
ranks high in our public policy."  Pascarella, 190 N.J. Super. at
125 (quoting Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App.
Div. 1961)).  See Bistricer v. Bistricer, 231 N.J. Super. 143,
151 (Ch. Div. 1987) ("The policy of our court system is to
encourage settlements and the court should 'strain' to uphold
such settlements.").

Traditional contract law rules provide that a contract
arises from the manifest intentions of the parties to engage in
an offer and acceptance of sufficiently definite essential terms.
Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992).  "New
Jersey law specifies that parties may orally, by informal
memorandum, or both, agree upon all essential terms of a contract

and effectively bind themselves thereon, if that is their intention, even though they contemplate the later execution of a formal document to memorialize their undertaking." U.S. v. Lighthman, 988 F.Supp. 448, 459 (D.N.J. 1997) (quoting Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 305 (App. Div. 1958)).

"An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970) (listing cases). Where a settlement agreement is asserted, the law provides that if the parties have manifested agreement upon the essential terms of the agreement, leaving the details to be "fleshed out" in a writing thereafter, "the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993). In that context, "[a] contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested." Brawer v. Brawer, 329 N.J. Super. 273, 283 (App. Div. 2000) (quoting Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992)); see also Leitner v. Braen, 51 N.J. Super. 31, 38 (App. Div. 1958) ("The phrase, 'meeting of the minds', can properly mean only the agreement reached by the parties as

22

expressed, i.e., their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former.").

To be enforceable, a contract must also be accompanied by consideration.  Friedman v. Tappan Dev. Corp., 22 N.J. 523, 533 (1956).  Where the parties make mutual promises to do some future act, "the consideration of the promise of one party is a promise on the part of the other."  Id.

The party seeking to enforce an alleged settlement agreement has the burden of proving the existence of the agreement under contract law.  Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997).  Where, as here, there is no signed written agreement and the parties dispute whether they manifested a mutual intent to be bound, the Court must rely upon the credible evidence such as the contemporaneous documents and conduct of the parties, together with reasonable inferences to be drawn from that evidence.  See Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 373-74 (App. Div. 1975).  Applying these principles, we find that the movants, third-party defendants Carr and Bohacik, have met their burden of proving that they entered into an enforceable settlement agreement with Trine.[14]  Trine expressed a clear, unequivocal offer of settlement in Mr. Judge's written proposal on December 20, 2005:

---

[14]  Detailed citations to the record are found in the preceding section of this opinion.  Here we omit those citations except after quoted language.

> Trine proposes that it exchange written mutual releases
> with individual defendants Thomas Carr and Richard
> Bohacik.
>
> Trine will not release any claim against Component
> whether asserted or unasserted.  The releases would
> provide that they have no preclusive effect upon and
> shall not be deemed to constitute a waiver of any claim
> that Trine and Component have against each other.
> Trine would contemporaneously execute a Stipulation of
> Dismissal with Prejudice of all claims asserted against
> defendants Carr and Bohacik.

(Dkt. entry 64-3.)

Ms. Butera spoke by telephone with Mr. Judge that same

day.[15]  The next day, December 21, 2005, was the deadline for all

parties to convey their discovery plans to the Magistrate Judge.

Counsel for Messrs. Carr and Bohacik instead informed the Court

of their settlement with Trine.  On that date Ms. Butera

confirmed in writing to the Court, with copies to all counsel,

that the parties had agreed to a settlement on these terms:

> Trine and Third-Party defendants Messrs Carr and
> Bohacik have agreed to exchange mutual releases of all
> claims and Trine has agreed to dismiss its claims
> asserted against Messrs Carr and Bohacik in this action
> with prejudice.

(Dkt. entry 64-5.)

We find that those two written communications on December 20

and 21, 2005 respectively, one by each side to the settlement,

contained all of the necessary elements of a binding contract:

---

[15]   Ms. Butera states in her certification that during that telephone
conversation with Mr. Judge on December 20, 2005, she accepted Trine's
settlement proposal on behalf of her clients.  (Dkt. entry 64-2, ¶ 3.)  We
need not weigh that evidence in reaching our conclusion, because the written
record of communications is sufficient to ascertain the relevant facts.

offer, acceptance, consideration, and terms sufficiently definite to constitute an enforceable agreement.  By those written communications, the parties clearly manifested an intention to be bound.  The terms of the agreement, as described in those two mutually consistent communications, are sufficiently definite that the performance of each party can be ascertained with reasonable certainty, even in the absence of a formal executed document memorializing the settlement.

The conduct of both parties after that date was entirely consistent with the formation of that agreement.  Trine made no objection to Ms. Butera's announcement of settlement to the Court on December 21, 2005.  In fact, earlier that day it had already drafted and forwarded to her the first draft of the written document that would contain the mutual releases.  (Dkt. entry 64-4.)  At no time, until Trine received Component's letter to the Court of January 16, 2006, did Trine indicate to Ms. Butera or to the Court that there was not a settlement agreement with her clients.  Then Trine made its decision to dispute such settlement within just a few hours after receiving that letter from Component on January 17, 2006.

When Trine did first dispute the settlement on January 17, 2006, its letter to Ms. Butera expressly stated that the catalyst for taking that position was the letter from Component regarding discovery.  (Dkt. entry 64-13.)  Never before had Trine indicated

25

to Ms. Butera that it had merely been "attempting to negotiate a settlement between Trine and your clients."  (Id.)

The conduct of Trine's counsel leading up to that point had been entirely consistent with a recognition by both parties that they had reached a binding settlement agreement and were in the process of memorializing and refining it in a written document. Looking at all of the changes that were made in the successive drafts, and the accompanying e-mails between counsel, none conflicted with the essential terms as expressed by both parties in writing as of December 20 and 21, 2005.  In fact, the only additional term of any substance was to the effect that Mr. Rella, Jr., the president of Trine, was protected by and bound by the settlement in his individual capacity.  (See n.9 supra and accompanying text.)  All of the rest of the drafting was reflective of an uneventful process of reducing to formal legal language the terms previously agreed upon.  We find that up to the very moment of Trine's announcement that it was withdrawing from the process, both parties had repeatedly and consistently expressed an intention to be bound to the terms of the settlement, both by their written words and by their conduct.[16]

---

[16]  The case law authorities Trine relied upon in opposing this motion are factually inapposite.  Several of the cases involve negotiations for the sale of real property, which unlike other types of agreements, generally require more detailed contracts incorporating all pertinent terms.  Prant v. Sterling, 332 N.J. Super. 369 (Ch. Div. 1999); Morales v. Santiago, 217 N.J. Super. 496 (App. Div. 1987); Looman Realty Corp. v. Broad Street Nat'l Bank of Trenton, 74 N.J. Super. 71, 84 (App. Div. 1962) (acknowledging that there are many cases where courts have found preliminary agreements sufficient to form a binding contract, but stating that the subject matter in those cases "did not

Trine argues in the alternative that it was justified in withdrawing because of alleged bad faith on the part of Mr. Carr (acting as president of Component), when Component issued its discovery plan letter of January 16, 2006.  We find that argument singularly unpersuasive.  Component and Trine had remained locked in litigation against each other despite the settlement between Trine and the third-party defendants.  Both sides to the

---

require as detailed a contract" as the real estate agreement before it).  Unlike the present case where Trine and third-party defendants manifested a mutual intent to be bound by certain essential terms in their communications of December 20 and 21, 2005, the parties in these cases reached preliminary agreements, which were not sufficiently definite, and then continued to negotiate with respect to the essential terms of these agreements.  Prant, 332 N.J. Super. at 380 (holding that a series of draft agreements, around which the parties continued to negotiate essential terms of the contract, evidenced the parties' intent to be bound only by a final, written document); Morales, 217 N.J. Super. at 502 (finding real estate binder lacked essential terms needed to constitute a contract for the sale of real estate); Looman, 74 N.J. Super. at 84 ("[I]t appears that the intention of the board was to approve in a general way plaintiff's proposal.... However, the resolution does not reflect an intention by the board to be bound to a sale involving over $1,500,000 without a formal contract incorporating all of the necessary terms."); see also Donnelly v. Currie Hardware Co., 66 N.J.L. 388, 389 (1901) (concluding that no contract was formed between contractor and subcontractor because "it cannot reasonably be determined that the parties had agreed upon all the matters which they would expect to have included in their bargain ...").  Also, in several of these cases, the preliminary written agreements reached by the parties expressly provided that they were "subject to" the execution of a formal, written contract in which additional details would be addressed.  Morales, 217 N.J. Super. at 501; Looman, 74 N.J. Super. at 83.  However, neither the settlement communication sent by Mr. Judge on December 20, 2005, nor the response sent by Ms. Butera on December, 21, 2005 contain any such conditional language.  Finally, the cases Trine offers in support of the well-settled proposition that acceptance of an offer must be clear and unequivocal actually support third-party defendants' position, not Trine's.  In each of these cases the court found that the parties' preliminary agreement on key terms coupled with their objective intent to be bound by those terms created a binding contract despite the fact that no final, written document was ever executed by the parties.  In re The Score Board, Inc., 238 B.R. 585 (D.N.J. 1999); Ponzoni v. Kraft Gen. Foods, Inc., 774 F. Supp. 299 (D.N.J. 1991); Graziano v. Grant, 326 N.J. Super. 328 (App. Div. 1999).  As discussed above, the parties' conduct in the present case has been entirely consistent with their December communications regarding settlement and Trine has manifested an apparent intention to be bound by the terms of those communications, particularly when it failed to object to Ms. Butera's settlement announcement to the court.

settlement took great pains to make that clear to each other in the drafting of their settlement document.

Component -- both under its former counsel and its new counsel -- had consistently stated to the Court and to Trine that it would need extensive discovery over a period of many months, whether to respond to (or file) a motion for summary judgment or to complete the litigation.  That position did not change before or after Trine proposed settlement to the third-party defendants. Nor did any communication from Trine to the third-party defendants state or suggest that the settlement between those parties was contingent upon an anticipated change in the discovery posture of Component in the ongoing litigation.  "A contracting party is bound by the apparent intention he or she outwardly manifests to the other party.  It is immaterial that he or she has a different, secret intention from that outwardly manifested."  Brawer, 329 N.J. Super. at 283 (quoting Hagrish, 254 N.J. Super. at 138).  The fact that the parties included standard language in the Whereas Clause of the written settlement agreement drafts (regarding avoiding the cost and uncertainty of further litigation among the settling parties) did not, in our view, suffice to impose a contractual condition precedent upon the third-party defendants as to some unspecified anticipated change in Component's discovery posture.  Nor did the failure of Component to change its discovery posture amount to any breach of

their duty of good faith and fair dealing by Messrs. Carr and
Bohacik.  See, e.g., Sons of Thunder, Inc. v. Borden, Inc., 148
N.J. 396, 420-21 (1997).

     We further find that the exchange of written drafts between
the parties, culminating in the Last Draft, clearly manifested
mutual intent to be bound by the detailed language expressed in
that draft.  As to the last two items, suggested by Ms. Butera
and still outstanding when Trine announced its intention to
withdraw, we find that those were already implicit in the
language the parties had agreed to in the Last Draft.
Specifically, no money was changing hands in the settlement, and
the settlement was entered into by Messrs. Carr and Bohacik
individually.

     We hold that the additional agreed points, as set forth in
the Last Draft, became part of the settlement agreement between
the parties.  In the exchange of drafts and accompanying e-mail
communications, the parties did in fact "flesh out" those agreed
details.  Those points must therefore, in fairness and in equity,
be enforced as if the contents of the Last Draft had been signed
by Trine (and its President, Mr. Rella) and by Messrs. Carr and
Bohacik.

     The reasons expressed by Trine for its failure to execute a
written memorialization of the settlement agreement are not
sufficient to avoid its obligations.  No fraud or other

compelling circumstance has been demonstrated by Trine such as to require the agreement to be set aside.  Pascarella, 190 N.J. Super. at 124-25.  The fact that Trine ultimately concluded that the settlement of its third-party claims would not "streamline" the litigation as it had hoped, which we may credit as sincere, does not provide a basis to avoid the contractual obligation that Trine assumed in agreeing to settle with the third-party defendants.[17]

    "[S]ettlement agreements, if valid and not against public policy, are voluntary surrenders of the right to have one's day in court."  Bandera, 344 F.3d at 52 (staying judgment on jury verdict obtained after district court denied motion to enforce alleged pre-trial settlement agreement and remanding case for determination of whether a valid settlement agreement was established between the parties prior to trial).  "[T]he proposition that a case is not settled until the last 'i' is dotted and the last 't' is crossed on a written settlement agreement carries the germ of much mischief."  Bistricer, 231 N.J. Super. at 151-52.  This Court does not need to strain to

_____

    [17]  Counsel for Trine was undoubtedly correct to conclude that eliminating Messrs. Carr and Bohacik as party defendants would streamline the litigation to some degree.  Each of those defendants had a separate stake in the outcome of the litigation, independent of Component as a corporate defendant, and they had vigorous litigation counsel to represent their interests.  See n.3 supra.  Also, the existence of Trine's action against them foreseeably could have resulted in affirmative claims being raised by them later in the case either against Trine or, for example, against Trine's president, Mr. Rella, individually.  To the degree that those features have been removed from the case, the settlement should indeed streamline this litigation.

reach its conclusion, on the undisputed record here.  We hold that there is a valid settlement agreement between the parties to this motion, which must be enforced according to the terms upon which the parties have manifested mutual assent.

We will deny the motion insofar as it seeks counsel fees and costs to the movants.  "It is well settled that the inherent power of the court to sanction misconduct by the attorneys or parties before the court should be invoked only in extraordinary circumstances to remedy abuse of the judicial process."  Lightman, 988 F.Supp. at 466.  "The Third Circuit has admonished district courts to exercise with due care their inherent power to sanction....  As in any contract case, fees to enforce are not normally awarded where the contract ... is silent on the subject."  Id. at 467 (enforcing settlement agreement but denying counsel fees even where court found manipulative and bad faith conduct by reneging side).  We conclude that the appropriate judicial action in the circumstances is to enforce the bargain Trine made for itself in this settlement.  The parties will bear their own fees and expenses of the motion.

CONCLUSION

The Court for the reasons stated will grant the part of the motion of third-party defendants, Messrs. Carr and Bohacik, seeking to enforce their settlement agreement with Trine.  The part of the motion as to the request for counsel fees and

expenses will be denied.  The Court will issue an appropriate
order.

                                   ___s/ Mary L. Cooper_____
                                   **MARY L. COOPER**
                                   United States District Judge