## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| COMPONENT HARDWARE GROUP, INC., | : | Civil Action No. 05-891 (MLC) |
|  | : |  |
| Plaintiff, | : | **OPINION and ORDER** |
|  | : |  |
| v. | : |  |
|  | : |  |
| TRINE ROLLED MOULDING CORP., et al., | : |  |
|  | : |  |
| Defendants. | : |  |

This matter comes before the Court upon a motion by Defendant, Trine Rolled Moulding Corp. ("Trine") seeking leave to file a Second Amended Counterclaim to include additional claims for malicious abuse of process and malicious prosecution, as well as to amend and expand its existing claims of breach of contract, breach of fiduciary duty, interference with prospective economic advantage, unjust enrichment, and fraud. Trine filed a Brief ("Moving Brief") and Certification ("Cert. of Brendan Judge") in Support of its Motion [Docket Entry No. 109]. On June 4, 2007, Plaintiff Component Hardware Group, Inc. ("Component") filed opposition to Trine's Motion ("Opposition Brief") [Docket Entry No. 111]. Trine then filed a Reply Brief in Further Support of its Motion ("Reply Brief") [Docket Entry No. 113]. Having considered the submissions of the parties without oral argument pursuant to FED.R.CIV.P. 78, and for good cause shown, Trine's Motion for leave to Amend its Counterclaims is GRANTED IN PART and DENIED IN PART.

## I. Background

The parties and Court are familiar with the lengthy background of this matter, which therefore shall not be repeated here at length. Trine is a corporation which manufactures and designs steel products for several industries, including the foodservice industry. (Cert. of Brendan Judge at

Ex. B).  Component is a corporation that distributes foodservice hardware. (Id.)  In or about 1982, Component approached Trine to design, develop and manufacture a baffle-type grease filter for use in kitchen exhaust fan systems. (Id.)  Trine designed the filter and received the required approval to sell the design.  (Id.)  Shortly thereafter, Trine and Component entered into an agreement which stipulated that Trine would manufacture filters and sell them to Component, who would in turn sell them to customers. (Id.)  Trine asserts that an oral agreement existed between the parties stipulating that Trine would be the exclusive manufacturer of filters sold by Component until 2004. (Id.)

On January 25, 2005, Component filed a Complaint and an application for a preliminary injunction in state court. (Moving Brief at 1).  Trine removed the action to federal court and filed a counterclaim, alleging ownership of the grease filters at issue in the Complaint, an exclusive sales relationship between the parties, and a breach by Component of its contractual and fiduciary duties to Trine. (Opposition Brief at 2).  On January 6, 2005, the District Court denied Component's preliminary injunction application. (Cert. of Brendan Judge at Ex. B).  Eventually, Component dismissed all claims asserted against Trine. (See Docket Entry No. 107).

Trine alleges that prior to filing the Complaint, Component had knowledge that Trine had "every right to sell its filters and would do so to compete against Component once Component brought to market its new Chinese-manufactured filter, the Grease Guard," and that Component sought to "use this Court to improperly destroy competition...with full knowledge that its entire position was based **upon a lie.**" (Moving Brief at 1) (emphasis in original).  Trine further asserts that it only discovered this information after filing its Amended Counterclaim.  Therefore, Trine seeks to amend its Counterclaims to include new claims and expand its existing counterclaims.  Trine further asserts that Thomas Carr acknowledged receipt of a description of the parties' relationship

2

as maintained by Component's own records, prior to filing the Complaint, "that confirmed what Trine has been saying from the inception of this lawsuit." (Moving Brief at 4).  These records list Component as Trine's "exclusive sales representative to whom Trine pays a sales commission," instead of a "job shop," as stated in the Complaint. (Id.)

Trine also alleges that documents recently produced reveal that during the time period when Component was allegedly acting as Trine's exclusive sales agent on grease filters, Component was also purchasing and selling filters made by Rutzler Filter Corporation ("Rutzler"), another grease filter manufacturer. (Moving Brief at 7).  Diane Baumeister, Rutzler's President, revealed in her deposition that Component purchased Rutzler filters consistently from 1981 to 1995. (Cert. of Brendan Judge at Ex. O).  Trine was unaware of these purchases at the time because, according to Trine, Component "actively concealed its Rutzler purchases from Trine." (Reply Brief at 2).  Trine notes that it did not receive these documents until "the very last day of discovery, April 20, 2007." (Moving Brief at 5). Moreover, Steve Bohacik also testified that Component was Trine's exclusive commission sales agent for the grease filters since 1984. (Cert. of Brendan Judge at Ex. L).

Trine presently seeks leave to Amend its Counterclaims to include claims for malicious abuse of process and malicious prosecution, due to Component's knowledge of the parties' relationship and of Trine's right to manufacture and distribute its grease filters. (Moving Brief at 5). Additionally, Trine also seeks leave to incorporate the facts related to Component's purchase of Rutzler filters into its Counterclaim. (Moving Brief at 7-8).  Trine also seeks leave to amend its counts to include claims extraneous to grease filters requirements contracts. (Id.)

Component objects to all of Trine's proposed Amendments on the grounds that they are "legally unsupportable and would unnecessarily expand the scope of the litigation, delay the

resolution of this matter and increase litigation costs." (Opposition Brief at 1). Component further asserts that Mr. Carr did not actually read the records which described the parties' relationship, and therefore did not have malicious intent when he certified the Complaint against Trine. (Opposition Brief at 5). Component also asserts that, even if Mr. Carr had acted maliciously, Trine's proposed claims of malicious abuse of process and malicious prosecution will be futile because elements of each claim are missing from Trine's argument. (Opposition Brief at 3-4). Component also asserts that Ms. Baumeister's testimony about Rutzler selling grease filters to Component does not demonstrate that Component breached any contract with Trine, but that when "these sales occurred, the parties considered their relationship to be non-exclusive." (Opposition Brief at 4). Component also claims that the amendments to the claims that Trine moves to change in order to reflect Component's business with Rutzler are futile as time-barred by the applicable statutes of limitations. (Opposition Brief at 11).

## II. Analysis

Leave to amend pleadings "shall be freely given when justice so requires." FED.R.CIV.P. 15(a). Although this standard is liberal, courts will deny a motion to amend on grounds of dilatoriness or undue delay, prejudice, bad faith or futility. See Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000); Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005). The Supreme Court has held that leave should be granted "in the absence of...undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

4

**A.  There exists no undue delay or prejudice to Component**

The Third Circuit has held that a motion for leave to amend should be denied when the delay in amending the pleading is undue.  Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  However, the mere passage of time does not require that the motion be denied. Id. Moreover, "delay alone does not preclude amendment.  It must be coupled with a resultant burden on the court or prejudice to the other party." Amquip Corp. v. Admiral Ins. Co., 231 F.R.D. 197, 199 (E.D. Pa. 2005) (citing Cureton at 273).  When determining whether the delay is undue, the Court must focus on the moving party's reasons for not amending the pleading sooner.  USX Corp. v. Barnhart, 395 F.3d 161, 168 (3d Cir. 2004).

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (citing Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).  To establish prejudice, the non-moving party must show that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004).  The non-moving party must also demonstrate "that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely."  Id.

Component asserts that Trine's Motion to Amend its Counterclaim must be denied because the proposed amendments would "unnecessarily expand the scope of the litigation, delay the resolution of this matter and increase litigation costs." Opposition Brief at 1.  Trine claims that its

5

motion is not untimely or unfairly prejudicial. Moving Brief at 9.  Although Trine had previously amended its Counterclaim, the most recent Scheduling Order mandated that Trine's motion to amend be filed no later than May 25, 2007. [Docket Entry No. 108] Trine filed its motion and its proposed amendment in a timely manner; any delay by Trine in seeking its Amendments was the result of the unearthing of new information during discovery which gives rise to the new counterclaims as well as the expansion of existing counterclaims.  Additionally, Component has failed to show that any delay in filing the proposed amendment will place an unfair burden on it or the Court.  Component fails to demonstrate that allowing the amended pleading would require Component to expend significant additional resources to conduct discovery and prepare for trial, that it would signficantly delay the resolution of the dispute, or that it will prevent a party from bringing a timely action in another jurisdiction.  Thus, the Court finds that there is no undue delay or prejudice to the non-moving party.

**B.  Trine's New Claims are Futile, While the Expansion of Claims Relating to the Rutzler Purchases are not Futile.**

To show futility, the non-moving party must show that the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  Alvin v. Suzuki, 227 F.3d at 121.  Futility of amendment requires that the pleading as amended does not state a claim upon which relief can be granted.  In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  The amendment must be "sufficiently well-grounded in fact or law to demonstrate that it is not a frivolous pursuit."  Phillips v. Borough of Keyport, 179 F.R.D. 140, 144 (D.N.J.1998) (citing Harrison Beverage Co. v. Dribeck Imp., Inc. 133 F.R.D. 463, 469 (D.N.J. 1990)).  If the amendment would not withstand a motion to dismiss, then the court may deny the leave to amend.  Massarsky

v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983), cert. denied 464 U.S. 937 (1983).  In deciding whether to deny a request for leave to amend, the Court should determine whether each claim would survive a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6). Id.

A motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) should be granted where "the plaintiffs could prove no set of facts that would entitle them to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).  Accordingly, the "complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief may be granted." Eli Lilly v. Roussel Corp., 23 F. Supp. 2d 460, 475 (D.N.J. 1998)(internal citation omitted).  When analyzing whether the moving party has stated a claim upon which relief can be granted, the court must view all allegations in the pleading, and all reasonable inferences that can be drawn therefrom, in the light most favorable to that party.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1280, 1384-85 (3d Cir. 1994). If it appears that relief can be granted under any set of facts that could be proved consistent with the plaintiff's allegations, a case should not be dismissed for failure to state a claim.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  The court may dismiss a case for failure to state a claim only when there is no relief that can be granted under the facts as alleged by the complainant.  Id.

### 1. Trine's Proposed Malicious Abuse of Process Claim is Futile

Malicious abuse of process comes from the "employment of a process not contemplated by law." Baglini v. Lauletta, 338 N.J. Super. 282, 294 (App Div 2001), certif. denied, 169 N.J. 607 (2001).  It is not sufficient for a malicious abuse of process claim that the "litigation is inspired by malicious or other improper motives." Penwag Prop. Co., Inc. v. Landau, 148 N.J. Super. 493, 498 (App. Div. 1977).  A requirement of the claim of malicious abuse of process is that the "litigator

7

perform further acts after the issuance of process which represent the perversion or abuse of the legitimate purposes of that process." Penwag Prop., 148 N.J. Super at 499 (citing Mayflower Indus. v. Thor Corp., 15 N.J. Super. 139, 151, aff'd 9 N.J. 605 (1952)).  Therefore, there must be further acts committed "after or other than the filing of the complaint [and the injunction application,] and proceeding upon them." Klesh v. Coddington, 295 N.J. Super. 51, 64 (Law Div. 1996).  In order for an abuse of process claim to lie against a party, that party must have "demonstrably used process after its issuance solely to coerce or injure his adversary." SBK Catalogue P'ship v. Orion Pictures Corp., 723 F. Supp. 1053, 1066 (D.N.J. 1989)(citing Tedards v. Auty, 232 N.J. Super. 541, 548-49 (App. Div. 1989)).

Component asserts that Trine's pleading of a counterclaim for malicious abuse of process should be denied as futile because Trine fails to plead the required element of "further acts."  Trine asserts that Component commenced this matter and moved to enjoin Trine from competing in the grease filter market with an ulterior motive, to wit, "to harm Trine in its business dealings by commencing suit and seeking injunctive relief against Trine with the knowledge that its claims were baseless."  Moving Brief at 11.  However, it is not sufficient for the litigation to be inspired by malicious motives without further acts asserted.  Component claims that Trine fails to adequately plead "further acts," and therefore the proposed amendment is clearly futile.  Trine counterargues that the "further acts" requirement is fulfilled by the "misrepresentations and outright lies that Component made to this Court as Component prosecuted its injunction application for five months after its filing and during the two-year period following Judge Cooper's denial of the injunction as Component prosecuted the baseless claims set forth in its Complaint."  Reply Brief at 1.

8

The material misrepresentations made to the Court by Component fail to qualify as "further acts" because they did not serve to injure Trine and they are protected by the litigation privilege. The misrepresentations, as alleged by Trine, that Component made to the Court include statements regarding the nature of the parties' relationship; assertions that the design of the Trine filter was Component's design; statements regarding Component's knowledge of Trine's right to compete against Component; and statements regarding the non-existent plan to gradually wind down Component's orders of Trine's filters. Reply Brief at 4-10. None of these material misrepresentations were used to further "coerce or injure" Trine. Tedards v. Auty, 232 N.J. Super 541, 549 (App. Div. 1989). In Tedards v. Auty, material misrepresentations made to the Court by the Defendant constituted "further acts" that satisfied that element of an abuse of process claim. Id at 551. However, these misrepresentations were used to set the incarcerated plaintiff's bail at a substantially higher amount, therefore injuring the plaintiff.

Additionally, the statements made by Component in the course of the litigation are protected by "the litigation privilege, which grants an absolute privilege to statements or communications made by attorneys in the course of judicial and quasi-judicial proceedings." Baglini v. Lauletta, 338 N.J. Super. at 297 (App. Div. 2001). In order for the statements to fall under litigation privilege, they must: "(1) be made in judicial or quasi-judicial proceedings; (2) be made by litigants or other participants authorized by law; (3) be made to achieve the objects of the litigation; and (4) have some connection or logical relation to the action." Id. The statements in question were made in a judicial proceeding since they were made in the Complaint and in motions that followed, by Component, a litigant in this matter. Component made these statements to achieve its object of the litigation, which

9

was to obtain an injunction against Trine.  Finally, the statements were connected to the action, as they were directly related to whether Component should obtain such an injunction against Trine. Hence, the statements that Component made to the court after filing the Complaint and injunction application, even if they were material misrepresentations, were protected by litigation privilege. Therefore, the alleged lies that Component continued to tell to the Court do not constitute further acts for the purpose of a claim of malicious abuse of process.  Trine has failed to plead each element of this claim, and it is therefore futile to amend the Amended Counterclaim to include such claim.

  *2. Trine's Proposed Malicious Use of Process Claim is Futile*

  In order to establish a prima facie claim for malicious use of process in a civil action, a party must show that the action was instituted against the movant, that it was "actuated by malice," "that there was an absence of probable cause for the proceeding," "that it was terminated favorably" towards the movant, and that the movant suffered a "special grievance." Klesh, 295 N.J. Super. at 58 (citing Lind v. Schmid, 67 N.J. 255, 262 (1975)).  Since there is no deprivation of liberty when a civil complaint is filed, "the minimal impact of the commencement of civil litigation is insufficient for recovery without the additional showing of a special grievance."  Klesh, 295 N.J. Super. at 59  (citing Vickey v. Nessler, 230 N.J. Super. 141, 147 (App. Div. 1989)).  Additionally, courts have not viewed malicious use of process claims favorably because of the deeply rooted value that the court must be freely accessible to the people, and the chilling effect wide use of malicious use of process claims would have on potential complainants.  Penwag Prop. Co., Inc. v. Landau, 76 N.J. 595, 599 (1978).

Nevertheless, Component alleges only that the element of a "special grievance" is lacking in Trine's pleading.

A special grievance "consists of an interference with one's liberty or property and includes events such as the filing of a bankruptcy petition, granting an injunction, filing a *lis pendens* or wrongful interference with the possession or enjoyment of property." Klesh, 295 N.J. Super. at 59 (citing Penwag, 76 N.J. at 597-98). Counsel fees, the plaintiff's mental anguish or emotional distress, or "alleged loss of reputation which could flow from the mere filing of any complaint" do not constitute a special grievance. Brien v. Lomazow, 227 N.J. Super. 288, 304 (App. Div. 1988). In order for an interference with property to be a special grievance, the interference must "result *directly* from process issued in the proceeding that is said to have been malicious." Venuto v. Carella, 11 F.3d 385, 389 (N.J. 1993) (emphasis in original).

Component claims that Trine's proposed claim of malicious use of process is futile because Trine fails to plead and prove the "special grievance" element of the claim. Trine pleads initially that it suffered a special grievance because Component "wrongfully interfered with Trine's liberty to compete in the grease filter market." (Moving Brief at 12). However, Component only would have interfered with Trine's ability to compete in the market if the injunction had been granted. Since the injunction was not granted, Trine claims that interference with its ability to compete in the market *could have happened*. This potential harm does not support a claim of a special grievance, since "the test for purposes of a malicious prosecution claim is not what could have happened to the defendant, but what actually happened in the prior action." Klesh, 295 N.J. Super at 62 (citing Vickey v. Nessler, supra, 230 N.J. Super. 141, 149

11

(App. Div. 1989)).  Therefore, Component's injunction application as well as its Complaint are not a basis for a special grievance suffered by Trine.  Since Trine suffered no actual injury, but simply a *potential* injury, a cause of action for malicious use of process never accrued, and the claim is clearly futile.

Trine further argues that it suffered a special grievance as a result of the action's filing because it "disrupted Trine's business and caused Trine to lose business."  Reply Brief at 12.  Trine alleges that Component advised customers that Trine was selling its filters illegally, an allegation in Component's Complaint, and as a result Trine's biggest customer "expressed concerns about purchasing products from an entity facing an injunction."  Id.  Because of the pending injunction hearing, Trine claims that it also ceased contacting customers because of the fear that it would not be able to sell its filters in the future.  However, Trine continued to operate its business and continued to sell filters to existing customers, resulting in no actual injury.

Trine cites to Giri v. Rutgers Cas. Ins. Co. for the proposition that Trine's lost earnings due to voluntarily curtailing its business qualifies as a special grievance.  In Giri v. Rutgers Cas. Ins. Co., the Court found that the plaintiff, a doctor, had suffered a special grievance because, while facing a malicious lawsuit, he voluntarily shut down his business activities as a precautionary measure.  Giri, 273 N.J. Super. 340 (App. Div. 1994).  Trine argues that its situation is the same, because it voluntarily curtailed its business as a precautionary measure while facing a possible injunction.  However, in the case of Giri, the lawsuit and resulting possibility of having no malpractice insurance rendered the plaintiff completely unable to practice medicine, resulting in the complete loss of his total income.  This interference is

certainly more severe than that which Trine claims it suffered, which was simply that Trine did not recruit new business while awaiting the injunction hearing.  Therefore, the court finds that, even when regarding the allegations of the proposed counterclaim in a light most favorable to Trine, Trine still cannot show that it suffered a special grievance.  The claim for malicious use of process is futile.

   *3.  Trine's Proposed Expansion of other claims to include Component's sales to Rutzler are not Futile because the Statute of Limitations is tolled by the Discovery Rule*

   Component claims that Trine's proposed amendments to its claims for breach of contract, fiduciary duty, intentional interference with prospective economic advantage, and unjust enrichment are time barred by the statutes of limitations that apply to each claim.  Opposition Brief at 11.  The statutes of limitations which apply in this case mandate that a breach of contract action must be commenced within four years after the cause of action has accrued *N.J.S.A.* §12A:2-725(1). Actions for non-UCC breach of contract, breach of fiduciary duty, fraud, interference with prospective economic advantage and unjust enrichment must be commenced within six years after the cause of any such action has accrued. *N.J.S.A.* §2A:14-1.  Therefore, the statute of limitations for any action proposed in Trine's Amended Counterclaim is six years or less. The alleged sales of Rutzler filters during the period of exclusivity between Trine and Component took place between 1984 and 1995, when Component no longer purchased Rutzler filters.  Since "ordinarily, a statute of limitations begins to run when all elements of a cause of action are present or, more plainly, from the moment of the wrong," the statute of limitations relating to the Rutzler purchases would ordinarily bar all claims commenced after 2001. See Michaels v. N.J., 955 F.Supp. 315, 326 (D.N.J. 1996) (internal citations and quote omitted).

13

However, Trine claims that the "discovery rule" provides an exception in this case, which would provide that the statute of limitations has not yet run on the Rutzler purchases.   This exception would have tolled the statute of limitations until Trine became aware via discovery of the Rutzler purchases on April 20, 2007.  The discovery rule "provides that, in an appropriate case, a cause of action will not accrue until the injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of a course of action." O'Keefe v. Snyder, 83 N.J. 478, 491 (1980).  This rule was created to avoid unfair judgments against a party who was "unaware that he has a cause of action,...solely because of his ignorance." County of Morris v. Fauver, 153 N.J. 80, 109 (1998) (quoting Lopez v. Swyer, 62 N.J. 267 (1973)).  At the same time, the statute of limitations rules are in place in order to prevent injustice to the other party, as it may be "unjust to compel a person to defend a law suit long after the alleged injury has occurred, when memories have faded, witnesses have died and evidence has been lost." Id.  In order to be fair to both parties, New Jersey courts have held that "the equitable claims of both parties must be weighed against each other and not every delayed discovery will justify the application of the rule." Id.

Component alleges that Trine failed to exercise due diligence by directing and monitoring Component's sales activities regularly throughout the period when the Rutzler sales were taking place. Opposition Brief at 12.  Since Component was allegedly Trine's sales agent (according to Trine), Trine then has an affirmative duty as principal to exercise such due diligence.  See Seltzer v. I.C. Optics, Ltd., L.C., 339 F.Supp.2d 601, 609 (D.N.J. 2004) (noting that "[a]n agency relationship arises when one party consents to have another act on its behalf, with the principal

14

controlling and directing the acts of the agent.") Opposition Brief at 12.  Component argues that

if Trine did not take the proper steps to try to monitor the sales of Component, then Trine is not

entitled to the discovery rule; "equity does not aid one whose indifference contributes materially

to the injury he complains of."  Thakar v. JFK Medical Center, 2007 WL 14988816, at *4 (App.

Div. May 24, 2007).  Therefore, if Trine *should have known* about the Rutzler sales, the statute of

limitations would not be tolled.

Trine, in turn, alleges that Component "actively concealed" from Trine the Rutzler

purchases. Reply Brief at 14.  New Jersey courts have held that "active concealment tolls the

statute of limitations until the plaintiff exercising reasonable diligence knows or should have

known of the fraud."  Stier v. Satnik Development Co., 974 F.Supp. 436, 439 (D.N.J. 1997)

(citing Plain v. Flicker, 645 F.Supp. 898, 902-03 (D.N.J. 1986)).  Trine asserts that without

having conducted discovery pending this action, it never would have learned of the Rutzler filter

purchases.  Moving Brief at 13.  Trine further asserts that Component waited until the last day of

discovery to produce the documents revealing evidence of the Rutzler purchases; therefore,

"Trine was prevented from conducting discovery regarding the Rutzler documents by

Component's last-minute production of those documents."  Moving Brief at 13.  The Court finds

that Trine reasonably did not know about the Rutzler purchases until Component produced

documents at the very end of the discovery period.  Therefore, Component's active concealment

of the Rutzler purchases tolled the statute of limitations under the discovery rule.  Trine's

expansion of its Counterclaims to include the Rutzler purchases are not clearly futile.

15

### III.  Conclusion and Order

Since neither of Trine's proposed causes of action for malicious abuse of process and malicious use of process will survive a motion to dismiss for failure to state a claim upon which relief can be granted, the Court finds that Plaintiff's Motion to Amend in order to add additional counterclaims must be DENIED as futile.

Because Plaintiff's proposed expansion of its Counterclaims to include the Rutzler sales is not clearly futile, as the statute of limitations has been tolled by the discovery rule, the Court finds that Plaintiff's Motion to Amend to expand existing Counterclaims to include the Rutzler purchases must be granted.

THEREFORE, IT IS on this 27th day of July, 2007,

ORDERED that Defendant's Motion to Amend GRANTED in part and DENIED in part in accordance with the foregoing; and is further

ORDERED that Defendant file its amended counterclaim no later than August 10, 2007; and it is further

ORDERED that the Clerk of the Court terminate this motion accordingly [Docket Entry No. 109].

    s/   Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

16